IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-00552-CNS

SEBASTIAN REPELA,

      Petitioner,

v.

ICE FIELD OFFICE DIRECTOR – DENVER FIELD OFFICE,

      Respondent.

---

**ORDER**

---

Before the Court is *pro se* Petitioner Sebastian Repela's Petition for Writ of Habeas Corpus filed February 11, 2026, ECF No. 1, and Emergency Motion for Immediate Release from Detention, ECF No. 12. Petitioner also filed a number of notices and declarations with the Court while the Petition was pending, including (1) Notice of Emergency Filing, ECF No. 11; (2) Affidavit of Sebastian Repela, ECF No. 13; (3) Supplemental Declaration of Petitioner, ECF No. 14; (4) Notice Regarding Procedural Confusion and Due Process Concerns, ECF No. 15; and (5) Request for Clarification Regarding Removal Procedures and Travel Documents, ECF No. 16. In response to the Order to Show Cause entered by Magistrate Judge Richard T. Gurley, ECF No. 3, Respondents filed a response to the Petition on March 18, 2026, ECF No. 19. The same day, Respondents also filed Respondent's Expedited Motion to Vacate Order Directing

1

Respondent Not to Remove Petitioner From the District of Colorado and the United States (ECF No. 6). ECF No. 20.

As outlined in greater detail below, having reviewed the parties' submissions, the Court hereby orders that the habeas corpus petition, ECF No. 1, and emergency motion for immediate release, ECF No. 12, are DENIED. Additionally, the Court defers ruling on Respondents' motion to vacate until after it receives confirmation that Petitioner's Polish passport has been received, pursuant to the requirements described below.

## I.    SUMMARY FOR *PRO SE* PETITIONER

You have filed a petition for habeas corpus, requesting that the Court order your immediate release from immigration detention. You have also filed an emergency motion seeking the same result—immediate release—but informing the Court you are requesting release due to concerns about your safety and well-being while in immigration detention. The Court has also received and read your other notices and affidavits, including your requests for clarification regarding the status of your immigration case and the government's basis for your continued detention, as well as your declaration describing the circumstances that lead you to request voluntary departure from the United States.

As explained further below, because you requested voluntary departure from the United States, and because your departure is now imminent, the Court declines to order your immediate release at this time. Additionally, the Court is satisfied that the response to your Petition filed by Respondents answers your procedural questions, and the Court includes that information below.

Finally, the Court is deferring its ruling on Respondents' motion asking the Court to vacate its order preventing the government from facilitating your removal outside of the United States until Respondents have established that they have received a Polish passport for you and have secured all other necessary travel documentation for you to return to Poland in the immediate future. In doing so, the Court hopes to ensure that Respondents will not send you outside of Colorado prior to you boarding a flight to Poland.

## II.    ANALYSIS[1]

### A.  Petitioner's Request for Immediate Release

In his habeas petition, Petitioner seeks relief under 28 U.S.C. § 2241 and requests that the Court order his immediate release from detention at the Immigration and Customs Enforcement (ICE) detention facility in Aurora, Colorado. ECF No. 1 at 1. Petitioner represents that he has "been continuously detained for approximately seven months" and "has not received a conditionally adequate bond hearing." *Id.* Petitioner contends that his "prolonged and indefinite" detention "without an individualized bond hearing violates the Due Process Clause of the Fifth Amendment." *Id.* at 2. In his emergency motion, Petitioner adds that immediate release is also warranted because he has "experienced incidents that raise serious concerns regarding his personal safety and well-being" while in detention, including being "subjected to harassment and intimidation by other detainees, ECF No. 12 at 1, and suffering from "physical harm, including injuries affecting his ribs and dental condition," *id.* at 2.

---

[1] As Petitioner proceeds pro se, the Court construes his filings liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), but does not act as his advocate, *see Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

3

In response to the Petition, Respondents argue against immediate release because Petitioner has agreed to voluntarily depart the United States and return to Poland, and his departure is now imminent. ECF No. 19 at 4–5. Respondents further argue that because Petitioner did not request a bond hearing despite appearing before an immigration judge (IJ) to request voluntary departure, Petitioner failed to exhaust all available administrative remedies, and thus habeas relief is not a proper request and should be denied. *Id.* at 6–7; *see also* ECF No. 19-1 (Walker Decl.) ¶ 12 ("Petitioner did not file a motion for custody redetermination or otherwise request a bond hearing with EOIR. To date, he has not requested a bond hearing from the [IJ].").

With respect to Respondents' second point, the Court is not convinced that Petitioner is required to exhaust his administrative remedies before the Court can order habeas relief. It is true that federal regulations permit Petitioner, who is detained pursuant to 8 U.S.C. § 1226(a), *id.* at 3 (citing ECF No. 19-1 ¶ 10), to request a bond hearing before an IJ at any time prior to the entry of a final order of removal. *See* 8 C.F.R. § 236.1(d)(1) ("After an initial custody determination . . . the respondent may, at any time before an order under 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be released."); 8 C.F.R. § 1003.19 (providing framework for requesting a bond determination). However, even though a noncitizen detained pursuant to § 1226 *may* request a bond hearing, they are not *required* to do so before they can pursue § 2241 habeas relief. *See, e.g.*, *Salvador F.-G. v. Noem*, No. 25-CV-0243-CVE-MTS, 2025 WL 1669356, at *6 (N.D. Okla. June 12, 2025) ("[Section] 1226 contains no clear rule that requires exhaustion of administrative remedies.") (citing 8 U.S.C. § 1226).

4

And while "exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief" in general, neither the statutory language of § 1226 nor the habeas statute "expressly contain such a requirement." *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010).

Respondents' exhaustion argument notwithstanding, however, the Court declines to order Petitioner's immediate release at this time given the facts at issue here. Specifically, the declaration from Daniel Walker, the Deportation Officer assigned to Petitioner's case, states that Petitioner, who is a native and citizen of Poland, ECF No. 19-1 ¶ 4, appeared before an IJ on February 12, 2026 and requested voluntary departure, which the IJ granted, *id.* ¶ 13. ICE has since submitted a travel document request to the Consulate of Poland, *id.* ¶ 14, and was informed on March 18, 2026 that a passport was issued for Petitioner and that ICE should receive that passport today, March 19, 2026, *id.* ¶ 17. Petitioner is currently scheduled to voluntarily depart the United States via a commercial airline flight on March 21, 2026, and he is scheduled to land in Poland on March 22, 2026. *Id.* ¶ 16. These facts, without more, do not demonstrate that Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. Accordingly, Petitioner's request for immediate release is denied.

The Court notes, however, Petitioner's declaration which states that his decision to voluntarily depart from the United States was "made under conditions of significant uncertainty and lack of information while [he] was detained and attempting to understand the process without legal counsel." ECF No. 14 at 1; *see also* ECF No. 15 at 1. Petitioner further represents that at the time he requested voluntary departure, he had requested

other information from ICE that he had not yet received, including about the specific basis for his continued detention, the procedural status of his case, the documentation required for his removal, and the expected timeline for obtaining his travel documents. *Id.* The Court does not intend to minimize the confusion and frustration Petitioner may have felt in those circumstances. The Court also understands that there has been a recent initiative by immigration authorities to aggressively encourage noncitizens to self-deport, which may have impacted Petitioner's decision. *See, e.g., Mercado v. Noem*, 800 F. Supp. 3d 526, 575 (S.D.N.Y. 2025) ("Statements from senior [immigration] officials suggest that harsh conditions of confinement are a deliberate feature of the enforcement program intended to induce" and "encourage self-deportation"); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *10 (D. Mass. May 8, 2025) (describing the immigration policy initiatives enacted in 2025 to "support those who planned to self-deport").

Nevertheless, Petitioner's uncertainty in this instance does not alter the Court's decision for two reasons. *First*, there is no indication that Petitioner did not understand the consequences of his decision to request voluntarily departure. Rather, Petitioner's questions seem to be focused more on the logistics of his detention, including how and when departure would occur.[2] *Second,* the Court is not convinced that timely answers

---

[2] *Cf. Chacon-Corral v. Weber*, 259 F. Supp. 2d 1151, 1162 (D. Colo. 2003) ("The importance of the information conveyed and elicited during a deportation hearing—both for the immediate fate of the alien caught up in it as well as for his future ability to reenter the United States lawfully—cannot be overstated. The immigration laws are technical and complex, and their application in one context, . . . may have serious, even draconian, consequences for an alien affected by them in another. A genuine appreciation of the advantage of voluntary departure over forced deportation, for example, may impact an [noncitizen's] decision to agree to it or not[.]").

from the government to Petitioner's questions would have changed the outcome.[3] As explained in Respondents' response and Mr. Walker's declaration, Petitioner's Notice to Appear charged him with being deportable from the United States under 8 U.S.C. § 1227(a)(1)(B) because Petitioner is a noncitizen who remained in the United States after his B-2 visa expired. ECF No. 19-1 ¶¶ 5, 6, 11. In connection with those charges, Petitioner is detained pursuant to 8 U.S.C. § 1226(a). *Id.* ¶ 10. Had Petitioner not chosen to voluntarily depart, his removal proceedings would have continued before an IJ. Additionally, with respect to the paperwork required for Petitioner's removal, the Court infers from Mr. Walker's declaration that the government needed to obtain Petitioner's Polish passport, which it now has taken steps to do. *See id.* ¶¶ 14, 15, 17. The government requested a passport for Petitioner from the Consulate of Poland on March 10, 2026. *Id.* ¶ 14. Just over a week later, on March 18, 2026, the Consulate of Poland notified ICE that a passport was issued to Petitioner and that ICE should receive the passport by March 19. *Id.* ¶ 19. In the interim, the government arranged for Petitioner's flight back to Poland, which is now scheduled for March 21. Although the Court cannot know for certain how having answers to those questions sooner would have impacted

---

[3] The same is true for the clarification requests in Petitioner's supplemental declaration. ECF No. 14 at 2–3. There, Petitioner seeks clarity on the language in his removal order referring to his removal being "without expense to the Government" and made "under safeguards." *Id.* As Respondents explained, "without expense to the Government" does not mean that Petitioner bears the cost of his departure because "ICE, not Petitioner, has paid" for Petitioner's travel to Poland. ECF No 19 at 4; *see also* ECF No. 19-1 ¶ 16. Additionally, the IJ's grant of Petitioner's "voluntary departure under safeguards . . . means [Petitioner] will remain in custody until his departure." ECF No. 19-1 ¶ 13 n.1; ECF No. 19 at 5. The Court is satisfied with Respondents' answers to these inquiries, but notes its disappointment that Petitioner had to seek intervention from the Court in order to obtain them.

Petitioner's decision, the Court is inclined to believe that this information has little bearing on whether voluntarily departure was the best choice for Petitioner.

Finally, as the Court noted above, Petitioner's emergency motion indicates that Petitioner has been harassed and suffered physical harm while in immigration detention. *See* ECF No. 12 at 1 (stating that Petitioner has been subjected to "harassment and intimidation by other detainees"); *id.* at 2 (stating that Petitioner has "suffered physical harm, including injuries affecting his ribs and dental condition" while in detention). These allegations are unverified, and Respondents did not address them in their response. However, it is undisputed that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cty Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). This is true even for noncitizens held in federal immigration detention. *See, e.g.*, *Recarte Cruz v. Guadian*, No. 20-3284-JWL, 2020 WL 7024298, at *7 (D. Kan. Nov. 30, 2020) (providing that "the Fifth Amendment provides [civil immigration] detainees a right to be protected from harm") (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). As the Court is ordering that Petitioner remain in detention pending his voluntary departure, Respondents must comply with this obligation.

Accordingly, consistent with the foregoing, Petitioner's habeas petition, ECF No. 1, and emergency motion for immediate release, ECF No. 12, are DENIED. Petitioner is to remain in immigration detention until his voluntary departure from the United States on March 21, 2026. Further, Respondents are ORDERED to take appropriate steps to

ensure Petitioner is protected from harm while he remains in detention prior to his voluntary departure, including addressing any harassment, intimidation, or physical harm Petitioner reports.

**B. Respondents' Motion to Vacate**

Having dispensed with Petitioner's motion and petition, the Court turns to Respondents' motion to vacate, which requests that the Court "vacate its prior February 17, 2026" order. ECF No. 20 at 2. The Court defers ruling on the motion at this time.

The February 17, 2026 order provides that "Respondents SHALL NOT REMOVE Petitioner from the District of Colorado or the United States unless or until this Court or the Court of Appeals for the Tenth Circuit vacates this Order." ECF No. 6. One purpose of the February 17, 2026 order is to prevent Respondents from transferring Petitioner outside the District of Colorado while the concerns giving rise to his habeas petition are unresolved. However, in light of the representations in Respondents' briefing, such concerns will be moot shortly, as Respondents ask the Court to vacate its order so that it may "facilitat[e] Petitioner's voluntary departure." ECF No. 20 at 2. From Respondents' briefing, the Court understands that so long as ICE receives Petitioner's passport from the Consulate of Poland in time, Petitioner will be able to voluntarily depart on March 21, 2026 as currently scheduled.

However, at the time Respondents' brief was filed, ICE had not yet received Petitioner's passport. ECF No. 19-1 ¶ 17. Accordingly, Respondents are ORDERED to file a status report within 24 hours of this Order, confirming that ICE has received Petitioner's passport from the Consulate of Poland. Once the Court has received such

confirmation, and so long as the Court is aware of no other issues preventing Petitioner's scheduled March 21, 2026 voluntary departure, the motion to vacate will be granted.

### III.    CONCLUSION

Consistent with the foregoing, Petitioner's Petition for Writ of Habeas Corpus filed February 11, 2026, ECF No. 1, and Emergency Motion for Immediate Release from Detention, ECF No. 12, are DENIED. Petitioner is to remain in immigration detention until his scheduled voluntary departure from the United States on March 21, 2026. Further, Respondents are ORDERED to take appropriate steps to ensure Petitioner is protected from harm while he remains in detention prior to his voluntary departure.

Additionally, the Court defers ruling on Respondent's Expedited Motion to Vacate Order Directing Respondent Not to Remove Petitioner From the District of Colorado and the United States (ECF No. 6), ECF No. 20, at this time. Respondents are further ORDERED to file a status report within 24 hours of this Order confirming that (1) ICE has received Petitioner's passport from the Consulate of Poland, and (2) there are no further issues preventing Petitioner's voluntary departure from proceeding as scheduled on March 21, 2026.

DATED this 19th day of March 2026.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge

10